## Case No. 5,578.

GOODYEAR et al. v. MULLEE et al.

[3 Fish. Pat. Cas. 259; 5 Blatchf. 463.] [1]

Circuit Court, S. D. New York. Sept. 17, 1867.

PATENTS—VIOLATION OF INJUNCTION—IMPUTATION OF KNOWLEDGE TO DEFENDANT.

1. The defendant claimed that he had not knowingly violated an injunction issued on the Goodyear "hard rubber" patent, because he believed that he had a right, under the injunction, to make and sell articles containing more than sixteen ounces of sulphur to sixteen ounces of India rubber, and he had made and sold no other articles. On testimony that a comb sold by him contained, by analysis, less than sixteen ounces of sulphur to sixteen ounces of rubber, the court held that he had wilfully violated the injunction.

2. But, as it appeared that he had already been imprisoned fifty days, and had not given bail, which had been fixed at $2,000, and could not give it, and had a family and no means, the court released him on his own recognizance, in the sum of $2,000, for his appearance, whenever ordered to appear, further proceedings on the attachment to be suspended indefinitely, but to be resumed if the defendant should thereafter be guilty of violating the injunction, or on other good cause to be shown.

This was a motion [by Henry B. Goodyear, as administrator, etc., and Conrad Poppenhusen] for attachments against the defendants [William Mullee and John Miller] already referred to in the report of the case of Goodyear v. Mullee [Case No. 5,577]. The matter having been referred to a master to take testimony as to the intention of the defendants in violating the injunction, the case came up upon his report.

Abbett & Fuller and Chas. M. Keller, for complainants.

T. Darlington, E. Wetmore, and Gardner Spring, Jr., for defendants.

¹ [Reported by Samuel S. Fisher, Esq., and by Hon. Samuel Blatchford, District Judge, and here compiled and reprinted by permission. The syllabus is from 5 Blatchf. 463, and the statement and opinion are from 3 Fish. Pat. Cas. 259.]

BLATCHFORD, District Judge. This case came before me in July last, on separate motions for attachments against the defendants for alleged violations of an injunction. The injunction was a perpetual one, issued in this suit October 18, 1866, in pursuance of a decree made on a final hearing herein. The injunction restrained the defendants from "making, manufacturing, and selling, in violation of" letters patent of the United States, reissued May 18, 1858, to Henry B. Goodyear, as administrator of the estate of Nelson Goodyear, deceased, for "a new and useful improvement in the manufacture of India rubber," and known and distinguished as reissues Nos. 556 and 557, and extended for seven years from May 6, 1865, "any combs or other articles which are made and manufactured of India rubber, or other vulcanizable gum, mixed with sulphur, or any equivalent therefor, either with or without auxiliary ingredients, in the proportion of one pound of India rubber, or other vulcanizable gum, to about from four ounces to a pound of sulphur, and then subjecting such mixture of India rubber, or other vulcanizable gum and sulphur, or any equivalent therefor, to a high degree of artificial heat, substantially as described and claimed in the said two reissued letters patent." This injunction was served on the defendant Mullee, November 6, 1866. On the motion against Mullee I decided that he had infringed the patents and violated the injunction, and that an attachment must issue against him. An attachment was accordingly issued, and he was taken into custody under it on the 31st of July last. His bail was fixed at two thousand dollars, but he has not given bail, and has been ever since and still is in custody. On the 6th of August he was brought before the court, and an order was made referring it to a master to take testimony on the question whether or not he intended to violate the injunction in doing the acts, or any of them, referred to in the affidavits of James Carton and William Ober, made herein (and which were the foundation of the motion for attachment), and to report such testimony to the court. The master has taken the testimony, and the case now comes up on this report. The testimony taken covers nearly two hundred manuscript pages of foolscap, and was not submitted to the court until September 11th. The reference was made to aid the court in determining what punishment should be awarded for the violation of the injunction. Both of the parties to the suit have examined witnesses on the question of the intent of the defendant in doing the acts mentioned in the affidavits referred to.

The defendant disclaims all intention of disregarding or contemning the process of the court. He avers that, after he was served with the injunction, he did not make or sell any hard rubber combs that did not contain more than sixteen ounces of sulphur

to sixteen ounces of India rubber, and that he believed he had a right to make and sell hard rubber combs containing more than sixteen ounces of sulphur to sixteen ounces of India rubber. He also avers, that the combs mentioned in the affidavits of Carton and Ober were made of a compound of eighteen ounces of sulphur to sixteen ounces of India rubber. A great deal of testimony has been taken as to the doings of the defendant at the factory at Chesterville, Pennsylvania, where he was engaged in making hard rubber combs during the period between the service on him of the injunction and the service of the papers for the motion for an attachment. This testimony is directed to the point as to the relative proportions of India rubber and sulphur used by the defendant, during that time, in the manufacture of hard rubber combs. The defendant claims, that the testimony shows, that he never, during that time, used a less proportion of sulphur to India rubber than sixteen ounces of sulphur to sixteen ounces of India rubber. When the case was before me on the former occasion, I held that the patentee was not limited to a quantity of sulphur not exceeding one pound to a pound of gum, and that a quantity of sulphur as great as twenty-two ounces to a pound of gum was within the claims of the patents, provided the substance produced had the qualities of the substance referred to in the patents. The defendant averred that he supposed the patents to be limited, in the upward range, to a quantity of sulphur not greater than sixteen ounces to sixteen ounces of gum, and that he had acted in good faith on that supposition, in making and selling the particular combs complained of. It does not appear when those combs were made. The affidavit of Carton sets forth that the defendant sold to him, at New York, about fifty gross of hard rubber combs; and that the first sale was made during the latter part of June, 1867. A comb, forming one of the fifty gross, is annexed to Carton's affidavit. The affidavit of Ober sets forth that the defendant sold to him two gross of hard rubber combs at New York, in June, 1867. A comb, forming one of the two gross, is annexed to Ober's affidavit.

The testimony given before the master, on the point as to whether the defendant used, in making hard rubber combs, after the service on him of the injunction, more or less than sixteen ounces of sulphur to sixteen ounces of gum, is conflicting, and, if the case stood upon the testimony of the witnesses as to what the defendant did at the factory at Chesterville, after the injunction was served on him, it would perhaps be difficult to arrive at any satisfactory conclusion on the subject, and, certainly, difficult to say that it was clearly shown that, after he was served with the injunction, he made combs containing less than sixteen ounces of sulphur to sixteen ounces of gum. But there

is one piece of evidence which is conclusive to show that the defendant violated the injunction knowingly and wilfully. The defendant, on the motion for the attachment, produced the affidavit of Charles A. Seely, a professional chemist of eminence, to the effect that it was possible to detect the percentage of sulphur in any given quantity of the compound composed by mixing India rubber, or other vulcanizable gum, with sulphur, and subjecting such mixture to a high heat under pressure, the means being a nice chemical analysis of such compound in the manufactured state. During the reference before the master, Professor Seely, on the 28th of August, 1867, by consent of both parties, took one of the two combs attached to the affidavits of Carton and Ober, for the purpose of analyzing it, and ascertaining the proportions of India rubber and sulphur in it. It was a condition of the consent, that the results of the analysis should be subject to inspection by either party, and should be certified to the court. An affidavit made by Professor Seely, September 5th, 1867, states, that he has analyzed the sample of hard rubber comb which he so received; that it contained forty-five and fifty-nine hundredths per cent. (45.59) of sulphur; and that there were no indications from which it could be inferred that the balance of the compound was anything else than India rubber. This gives a proportion, in the sample, of thirteen ounces and four-tenths of an ounce of sulphur to sixteen ounces of rubber. It does not appear whether it was the comb sold to Carton or the comb sold to Ober which Professor Seely analyzed, but it was one of them. This analysis shows, that the defendant has, since the injunction was served on him, violated it, by selling at least one comb of hard rubber containing less than sixteen ounces of sulphur to sixteen ounces of India rubber. The analysis is not gainsayed or questioned, and the clear inference, from Professor Seely's affidavit, is, that the only ingredient in the sample, besides sulphur, was India rubber, and that all which was not sulphur was India rubber. The unanswered and satisfactory testimony of this analysis contradicts and overthrows the allegation of the defendant that he has made no sale of hard rubber combs, since he was served with the injunction, that did not contain more than sixteen ounces of sulphur to sixteen ounces of India rubber. And, although, as stated in my former opinion, it is possible that the defendant may, in view of the peculiar language of the injunction, have honestly supposed that, if he used more than a pound of sulphur to a pound of gum, he was not infringing the patents, yet, in selling the comb analyzed by Professor Seely, the defendant was guilty of a clear violation of the plain terms of the injunction, and such violation must be held to have been committed wilfully and with knowledge. The result of this analysis leads strongly to the presump-

tion that all the combs sold to Carton and Ober, as set forth in their affidavits, would, on analysis, show like results. It becomes unnecessary, therefore, to consider further the question of the intent of the defendant in doing the particular acts complained of.

The defendant is, for this wilful violation of the injunction of this court, amenable to punishment. He has already been imprisoned nearly fifty days. He has not given bail, which was fixed at $2,000; and the giving of which would have secured his temporary release, and it is stated that he was unable to procure such bail. He has a wife and three children, the oldest under ten years of age, and an affidavit made by his wife sets forth, that he has no property, to her knowledge, except a little household furniture, and that all the property owned by herself or her husband, to her knowledge, including all moneys in her possession, or held to her credit, does not exceed in value four hundred dollars. A severe admonition has been administered to the defendant, and, although the plaintiffs have been put to large expense in prosecuting this attachment, which the defendant, if possessed of the means of doing so, ought to be compelled to reimburse, a requirement to that effect would, in this case, if such reimbursement were made a condition of the release of the defendant, probably result in a continuance of his imprisonment for an indefinite period. While, therefore, I am not disposed now to say that the punishment which the defendant has received is adequate to the offence, and to discharge him absolutely from the attachment, I am disposed to release him on his own recognizance, in the sum of two thousand dollars, for his appearance in this court whenever ordered to appear, further proceedings on the attachment to be suspended indefinitely. Those proceedings can be resumed if the defendant shall hereafter be guilty of violating the injunction, or on other good cause to be shown. An order will be entered accordingly.

[For other cases involving this patent, see note to Goodyear v. Mullee. Case No. 5,577. [See Case No. 5,579.]